IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA HAYBARGER                      )
            Plaintiff,               )
                                     )
      v.                             )    Civil Action No. 06-862
                                     )
LAWRENCE COUNTY ADULT                )
PROBATION AND PAROLE, COUNTY         )
OF LAWRENCE, WILLIAM MANCINO,        )
in his individual and                )
official capacities,                 )
            Defendant.               )

MEMORANDUM and ORDER

Gary L. Lancaster
Chief Judge.                                        July 13, 2010

            This is an action in employment discrimination.

Plaintiff, Debra Haybarger, alleges that defendant, Lawrence County

Adult Probation and Parole ("Lawrence County Probation"),

discharged her because of her disability in violation of Section

504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq.

("Rehabilitation Act"). Plaintiff further alleges that defendant

William Mancino, acting in his individual capacity, discriminated

against and retaliated against her in violation of the Family

Medical Leave Act, 29 U.S.C. § 2615(a)("FMLA").

            Ms. Haybarger originally asserted claims against all

defendants pursuant to the Americans with Disabilities Act, 42

U.S.C. §§ 12101 ("ADA"), the Pennsylvania Human Relations Act, 43

P.S. §§ 951 ("PHRA"), the Rehabilitation Act and the FMLA. [Doc.

No. 13]. By memorandum and order dated March 14, 2007, this court

partially granted defendants' motions to dismiss. [Doc. No. 29].

Specifically, the court dismissed all of plaintiff's claims against Lawrence County, plaintiff's ADA, FMLA and PHRA claims against Lawrence County Adult Probation and Parole, and plaintiff's ADA and FMLA claims against defendant Mancino in his official capacity. This court found that Lawrence County was not Ms. Haybarger's employer. The remaining claims were dismissed on the basis that some defendants are arms of the state and are, therefore, entitled to sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution. This court also dismissed plaintiff's ADA claim against defendant Mancino.

The record at that juncture was unclear as to whether Lawrence County Probation received federal funding. The parties were, therefore, directed to engage in limited discovery on this issue. At the close of discovery, defendants moved for summary judgment on the basis of the Eleventh Amendment. By memorandum and order dated August 24, 2007, this court found that Lawrence County Probation did receive federal funding and thereby waived sovereign immunity. Accordingly, the motion for summary judgment was denied. Defendants appealed. By order dated December 31, 2008, the court of appeals affirmed. <u>Haybarger v. Lawrence County Adult Probation and Parole</u>, 551 F.3d 193 (3d Cir. 2008).

Ms. Haybarger has conceded that she cannot state a PHRA claim against Mr. Mancino. Thus, the only remaining claims are Ms. Haybarger's Rehabilitation Act claim against Lawrence County Adult

2

Probation and Parole, and her FMLA claim against Mr. Mancino, in his individual capacity.

This matter is currently before the court on Mr. Mancino's motion for summary judgment, [doc. No. 71], and Lawrence County Probation's motion for summary judgment, [doc. No. 73]. For the reasons set forth below, Mr. Mancino's motion will be granted and defendant Lawrence County Adult Probation's motion will be denied.

I.    BACKGROUND

Unless specified otherwise, the following facts are undisputed. In 1988, defendant Lawrence County Adult Probation and Parole ("Lawrence County Probation") hired plaintiff Debra Haybarger as the Officer Manager. That same year, she was diagnosed with Type II diabetes. She also suffers from heart disease. From 2001 to her termination on October 4, 2004, Ms. Haybarger was supervised by Mr. Mancino. Mr. Mancino was, during the relevant period, the Director of Probation and Parole ("Director")[1].

Lawrence County Probation is an agency of the Lawrence County Court of Common Pleas. The Lawrence County Court of Common Pleas is the Commonwealth of Pennsylvania's 53rd Judicial District.

_____

[1]

Defendant Mancino is variously referred to as the "Chief Adult Probation Officer" and "Director of Probation and Parole" throughout the record. For clarity Mr. Mancino will be referred to as the "Director" throughout this memorandum.

3

Judge Dominic Motto has been President Judge of the Lawrence County Court of Common Pleas since June of 2004. Judge Motto, as President Judge, has ultimate decision making authority regarding decisions to hire or fire personnel. Michael Occhibone is Court Administrator. Mr. Mancino reported to Mr. Occhibone, who reported to the President Judge. Ms. Haybarger, the Deputy Director and Human Resources manager reported to Mr. Mancino. During Ms. Haybarger's employment, James Jendrysik was Deputy Director of Probation and Parole[2]. Vicki Bulisco served as Assistant Director[3]. At the time of Ms. Haybarger's termination, Susan Quimby was Lawrence County's Human Resources director.

As Office Manager, Ms. Haybarger was "required to perform a variety of moderately complex clerical, bookkeeping, and administrative duties." Job Description, Office Manager, Joint Appendix, [Exhibit 1 to Doc. No. 75] at page A-1 (hereinafter "Joint Appendix"). She was also "required to assist the [Director] in the administrative supervision of staff." Id. Further, the Office Manager was "primarily responsible for the keeping of financial records involving collections and disbursements." Id. In addition the job included, inter alia, management of supplies, supervision of clerk typists, supervision of collections of

---

[2]

In 2007, Mr. Mancino resigned. Mr. Jendrysik then became the Chief Adult Probation Officer.

[3]     In 2007, Ms. Bulisco became Deputy Chief.

4

payments and victim correspondence.  Id.

    As noted above, in 1988, Ms. Haybarger was diagnosed with
Type II diabetes.  Ms. Haybarger testified that her illness was
hard to control and caused a number of health problems including,
but not limited to, problems with her heart and kidneys.  Mr.
Mancino testified that he was aware of Ms. Haybarger's condition
since 1995, when he began working for Lawrence County Probation.
Mr. Mancino also became aware of Ms. Haybarger's heart problems
"toward the latter stages of her employment."  Joint Appendix at A-
136.

    Ms. Haybarger testified that, over the course of her
employment, Mr. Mancino made five to eight comments regarding her
health including: (1) asking her why she was breathing so heavily;
(2) asking her why she had so many doctor's appointments; and (3)
telling her that she needed to start taking better care of herself.
Joint Appendix at A-63.  Mr. Mancino admits that he made these
comments.

    In 2001, Mr. Mancino deemed Ms. Haybarger's performance
to have met expectations.  Joint Appendix at A-4.  Her performance
evaluation noted that "[d]ue to some illnesses [Ms. Haybarger] has
missed an unusual amount of days."  Joint Appendix at A-2  Under
the heading "Measurement," Ms. Haybarger was instructed to "improve
her overall health and cut down on the days she misses due to
illness."  Id.  The performance evaluation concluded that "[Ms.

5

Haybarger] still has many health problems which oftentimes has her away from work for many days ... [s]he will need to continue to work on this in the upcoming year." Id. Under "Future Goals" Ms. Haybarger was directed to "develop and train other clerical staff within the office to perform her duties when she is out of the office for extended periods of time." Joint Appendix at A-4. On April 5, 2002, Ms. Haybarger signed her performance evaluation, to acknowledge that she had reviewed the document and discussed it with her manager.

In 2002, Mr. Mancino gave Ms. Haybarger a virtually identical performance evaluation. Joint Appendix at A-7 - A-10. Her performance was again deemed to have met expectations. Id. at A-9. She was again given a "needs improvement" rating in the category of attendance. Id. at A -7. She was once more instructed to "improve her overall health and cut down on the days she misses due to illness." Id. Defendant Mancino again stated that "[Ms. Haybarger] still has many health problems which oftentimes has her away from work for many days ... [s]he will continue to work on this in the upcoming year." Id.

On April 29, 2003, Ms. Haybarger wrote a memorandum to David Prestopine of the Lawrence County Controller's Office regarding purchase orders that had not been paid. Joint Appendix at A-13. Ms. Haybarger informed Mr. Prestopine that "[s]ince the first of this year, I have missed a number of days of work ... I

have been absent from my office for illness, hospital stays, and a death in the family." Id. Ms. Haybarger further informed Mr. Prestopine that "[t]here are some bills that are late being paid." Id. Ms. Haybarger asked for Mr. Prestopine's "cooperation with the purchase orders that I submit for payment because of the dates on the invoices." Id. Ms. Haybarger copied Mr. Mancino on this memorandum.

Mr. Mancino testified that, in early 2004, Ms. Bulisco and Mr. Jendrysik reported to him that they had received complaints from Ms. Haybarger's subordinates regarding Ms. Haybarger's job performance. Mr. Mancino asked Mr. Jendrysik and Ms. Bulisco to conduct an investigation into these complaints. Mr. Jendrysik and Ms. Bulisco each conducted an investigation and prepared a written report.

In her report to defendant Mancino, dated March 18, 2004, Ms. Bulisco wrote that the clerical staff came to her on several occasions to complain about Ms. Haybarger. Specifically, Ms. Bulisco identified a number of complaints that all related to the clerical staff's belief that Ms. Haybarger was a poor manager. In his report to defendant Mancino, dated March 22, 2004, James Jendrysik also noted the clerical staff's complaints regarding Ms. Haybarger's management. Both Ms. Bulisco and Mr. Jendrysik related the clerical staff's complaints that office supplies were often not restocked. Mr. Jendrysik also noted that Ms. Haybarger had, on

7

several occasions, been "asked and/or instructed to do (sic) complete a task or to order a specific product ... [a]fter several days/weeks of waiting the task or product had still not been ordered or completed." Mr. Jendrysik further wrote that "the controller's office has contacted me on several occasions requesting reports that were due months previously and had not been received." Joint Appendix at A-20.

Ms. Haybarger disputes the accounts of Ms. Bulisco and Mr. Jendrysik. Specifically, Ms. Haybarger testified that there was only one clerical staff member who complained about Ms. Haybarger's performance. That staff member, Ms. Haybarger testified, was herself a poor performer who Mr. Mancino directed Ms. Haybarger to discipline. Ms. Haybarger also testified that when she was out on leave, Mr. Mancino did not arrange for anyone to cover her duties. Ms. Haybarger testified that, as a result, she would return to work to find piles of papers on her desk that had not been attended to. Some of these papers, she testified, were invoices that needed to be paid. Ms. Haybarger testified that when other members of the department took leave, either she or Mr. Mancino arranged for their work to be covered by others. Ms. Haybarger contends that Mr. Mancino refused to assign her work to others when she was absent due to her illnesses.

Meanwhile, in January of 2004, the Administrative Office of the Pennsylvania Courts implemented a Commonwealth wide

8

electronic Common Pleas Case Management System (CPCMS). Affidavit of Christine Patton, Joint Appendix at p. A-35 paragraph 1. Lawrence County went live with CPCMS on February 2, 2004. Lawrence County was one of the first to implement CPCMS. Training assistance was made available until May of 2004. Id. at paragraph 3. Records from the time show that Ms. Haybarger made a number of requests for technical support during that period. There is no dispute that the switch to CPCMS increased Ms. Haybarger's job duties. Ms. Haybarger contends that Mr. Mancino did not give her the time to become proficient with CPCMS.

On March 23, 2004, after discussing the matter with Mr. Occhibone, Mr. Mancino issued a written reprimand to Ms. Haybarger. Mr. Mancino informed Ms. Haybarger of all of the complaints contained in the reports of Ms. Bulisco and Mr. Jendrysik. As part of her probation, Ms. Haybarger was placed on a six (6) month performance improvement plan. There is a dispute as to whether the performance improvement plan was implemented. Ms. Haybarger claims that the performance improvement plan required Mr. Mancino to meet with her monthly and to give her regular feedback regarding her performance. She states that these meetings never happened. Defendants state that the performance improvement plan was implemented as it was presented to Ms. Haybarger. Defendants claim that the monthly meetings took place, just informally.

In July of 2004, Ms. Haybarger was hospitalized for

9

almost the entire month. Prior to her hospitalization, Ms. Haybarger told Mr. Occhibone that she was going to be hospitalized because she had a hematoma on her kidney. Joint Appendix at A-65. During her absence, her job was performed by Ms. Amy Strobel. There is no dispute that, upon her return to work, Mr. Mancino approved her request for leave. Defendants appear to dispute, however, Ms. Haybarger's contention that her July 2004, leave of absence was caused by her diabetes.

In September of 2004, Mr. Mancino discussed Ms. Haybarger's perfomance with Mr. Occhibone and President Judge Motto. Mr. Mancino told Mr. Occhibone and President Judge Motto that Ms. Haybarger's performance had not improved since being put on probation. There is no dispute that President Judge Motto made the decision to terminate Ms. Haybarger's employment after consulting with Mr. Mancino. On September 29, 2004, Mr. Mancino, Mr. Occhibone and Ms. Quimby informed Ms. Haybarger that her employment was going to be terminated for failure to improve her performance during her probationary period. By letter dated October 4, 2004, Ms. Haybarger's employment was terminated.

During Ms. Haybarger's employment, Lawrence County required employees to first exhaust their accrued paid vacation and personal leave prior to requesting unpaid FMLA leave. Lawrence County also required employees who missed three (3) days of work due to illness to submit a note from a doctor to their supervisor.

10

Ms. Haybarger was not always required to submit a note to Mr. Mancino. Lawrence County maintained forms for employees to use to request FMLA leave. Lawrence County also had forms for employees to use to request an accommodation of their disability. Ms. Haybarger, as Office Manager, was aware of these forms. There is a dispute as to whether Ms. Haybarger had access to the FMLA forms. She contends that Mr. Mancino refused to give her the forms. Mr. Mancino concedes that he did not give Ms. Haybarger the FMLA forms, but testified that his refusal to do so was based on the fact that, pursuant to Lawrence County's policy, she was not entitled to FMLA leave.

Ms. Haybarger timely filed a charge of disability discrimination with the Pennsylvania Human Relations Commission. The charge was dual filed with the Equal Employment Opportunity Commission ("EEOC"). Ms. Haybarger received her "Notice of Rights to Sue" on April 7, 2006. Ms. Haybarger filed the instant case on June 29, 2006.

II.    JURISDICTION and STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

11

movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(c)(2).

The mere existence of some factual dispute between the
parties will not defeat an otherwise properly supported motion for
summary judgment or partial motion for summary judgment. A dispute
over those facts that might affect the outcome of the suit under
the governing substantive law, i.e., the material facts, however,
will preclude the entry of summary judgment. Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment
is improper so long as the dispute over the material facts is
genuine. Id. In determining whether the dispute is genuine, the
court's function is not to weigh the evidence or to determine the
truth of the matter, but only to determine whether the evidence of
record is such that a reasonable jury could return a verdict for
the nonmoving party. Id. at 248-49.

The United States Supreme Court has "emphasized, [w]hen
the moving party has carried its burden under Rule 56(c), its
opponent must do more than simply show that there is some
metaphysical doubt as to the material facts.... Where the record
taken as a whole could not lead a rational trier of fact to find
for the nonmoving party, there is no genuine issue for trial."
Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations
omitted) (quoting Matsushita Elec. Indust. Co. v. Zenith Radio
Corp., 475 U.S. 574, 586-87 (1986)).

In summary, the inquiry on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

It is on this standard that the court has reviewed Defendant Mancino's and Defendant Lawrence County Adult Probation and Parole's motions for summary judgment. Based on the pleadings of record and the briefs filed in support and opposition thereto, the court will grant Mr. Mancino's motion, and deny Lawrence County Adult Probation and Parole's motion.

III. DISCUSSION

A.    Ms. Haybarger's Rehabilitation Act Claim against Lawrence County Probation

1.    Failure to Accommodate

Ms. Haybarger can establish that she was discriminated against in violation of the Rehabilitation Act [4] if she can show that Lawrence County Probation knew about her physical limitations and failed to provide her with a reasonable accommodation for any

---

[4]

The court of appeals has observed that the elements of a claim brought pursuant to the Rehabilitation Act are "very similar to the elements of a claim under Title I" of the ADA.    Donahue v. Consolidated Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000).    In fact, the statute provides that "the standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act of 1990."    Donahue, 224 F.3d 229, n. 4 (quoting 29 U.S.C. § 794(d)).

13

reason other than it would have imposed an undue hardship on their business. <u>Williams v. Phil. Housing Auth. Police Dep't</u>, 380 F.3d 751, 761 (3d Cir. 2004). If Ms. Haybarger made a request for a reasonable accommodation, Lawrence County Probation had a duty to engage in an "interactive process" to "help identify the precise limitations of the employee's disability and the potential options that could reasonably accommodate those limitations." <u>Jones v. United Parcel Serv.</u>, 214 F.3d 402, 407 (3d Cir. 2000).

Ms. Haybarger may show that Lawrence County Probation breached its duty to provide a reasonable accommodation by failing to engage in good faith in the interactive process by adducing evidence that: (1) Lawrence County Probation knew about her disability; (2) Ms. Haybarger requested an accommodation or assistance for her disability; (3) Lawrence County Probation did not make a good faith effort to assist Ms. Haybarger in seeking accommodations; and (4) Ms. Haybarger could have been reasonably accommodated but for the employer's lack of good faith. It is well established that a leave of absence for medical treatment may constitute a reasonable accommodation under the ADA. <u>Conoshenti v. Public Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 151 (3d Cir. 2004).

Lawrence County Probation insists that Ms. Haybarger is not disabled and/or that she never made a formal request for accommodation. Ms. Haybarger contends that she was disabled. In the alternative, Ms. Haybarger argues that Lawrence County

14

Probation mistakenly regarded her as disabled.

Pursuant to the Rehabilitation Act, an "individual with a disability" is "any person who ... (I) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). To prove that she was "regarded as" having a disability, Ms. Haybarger must show any of the following: (1) she has an "impairment that does not substantially limit major life activities but is treated by [defendant] as constituting such limitation;" (2) she has an "impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;" or (3) she has no impairment but is "treated by [defendant] as having a substantially limiting impairment." 29 C.F.R. § 1630.2(1).

Furthermore, the court of appeals has held that "either by direct communication or other appropriate means, the employee 'must make clear that [she] wants assistance for [her] disability.'" Colwell v. Rite Aid Corp., 602 F.3d 495, 507 (3d Cir. 2010)(quoting Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 332 (3d Cir. 2003)). The court of appeals explained that:

> "[t]he employer must have enough information
> to know of both the disability and the desire
> for an accommodation, or circumstances must be
> at least be sufficient to cause a reasonable
> employer to make appropriate inquiries about
> the possible need for an accommodation.

15

> Indeed the law does not require any formal
> mechanism or magic words to notify an employer
> that an employee needs an accommodation and
> circumstances will sometimes require the
> employer to meet the employee half-way, and if
> it appears that the employee may need an
> accommodation but doesn't know how to ask for
> it, the employer should do what it can to help
> ... [o]nce proper notice has been provided,
> however, both parties have a duty to assist in
> the search for an appropriate reasonable
> accommodation and to act in good faith"

Id. (citations and internal quotations omitted).

Viewing the evidence in the light most favorable to Ms. Haybarger, the court finds that a reasonable jury could decide that Ms. Haybarger had a disability and/or that Lawrence County Probation regarded her as having a disability. Thus, a reasonable jury could conclude that Lawrence County Probation violated the Rehabilitation Act by failing to accommodate Ms. Haybarger's need for leave. There is also a genuine issue of material fact as to whether Ms. Haybarger's need for leave imposed an undue burden on Lawrence County Probation. Accordingly, Lawrence County Probation's motion for summary judgment as to Ms. Haybarger's failure to accommodate claim will be denied.

### 2. Ms. Haybarger's claim that her Termination was in Violation of the Rehabilitation Act.

Ms. Haybarger also asserts that Lawrence County Probation terminated her because of her disability in violation of the Rehabilitation Act. In the alternative, Ms. Haybarger contends that she was terminated because she was regarded as disabled. To

16

state a claim under the Rehabilitation Act, Ms. Haybarger must show that: (1) she is an individual with a disability; (2) she is "otherwise qualified" for the job; (3) she was terminated solely because of her disability; and (4) the defendant receives federal funding. Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 123 (3d Cir. 1998). There is no dispute that Lawrence County Adult Probation and Parole received federal funding. Thus, the only remaining issues are whether Ms. Haybarger is an individual with a disability, whether she was "otherwise qualified" to perform her job as the Office Manager and whether she was terminated solely because of her disability.

Lawrence County Probation contends that Ms. Haybarger was not disabled, not regarded as disabled, and/or not otherwise qualified to perform the job of Office Manager. Ms. Haybarger contends that she had a substantial impairment in the major life activities of, inter alia, metabolizing food with regard to her diabetes and circulation with regard to her heart disease. In the alternative, she argues that Lawrence County Probation regarded her a disabled and points to both Mr. Mancino's comments about her health and her performance evaluations that chastise her for her health problems as evidence in support of this claim. Lawrence County Probation contends that, even if Ms. Haybarger could state a prima facie case of disability discrimination, they have articulated a legitimate non-discriminatory reason for her

discharge, namely, her poor performance. Ms. Haybarger responds that Lawrence County Probation's articulated reason for her discharge is in fact a pretext for discrimination.

In order to establish that she has a disability, Ms. Haybarger must show that "she has an impairment; identify the life activity that she claims is limited by the impairment; and prove that the limitation is substantial." Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 3788, 382 (3d Cir. 2004). There is a genuine issue of material fact as to whether Ms. Haybarger's diabetes and/or heart disease substantially limited a major life activity. The court of appeals has held that the question of whether or not an individual has a statutorily protected disability is an issue for the jury. Colwell v. Rite Aid Corp., 602 F.3d 495, 502 (3d Cir. 2010). Accordingly, Lawrence County Probation's motion for summary judgment must be denied.

Further, assuming that Ms. Haybarger had a statutorily protected disability, there is a genuine issue of material fact as to whether she was "otherwise qualified" to perform the duties of Office Manager. Lawrence County Probation appears to argue that Ms. Haybarger's need for medical leave rendered her unqualified to perform her job. It is undisputed that her only documented performance problems related to her need for medical leave. The evidence of record indicates that, during Ms. Haybarger's July of 2004 leave of absence, her work was assigned to Ms. Strobel. A

18

jury acting reasonably could conclude that, despite her need for
medical leave, Ms. Haybarger was otherwise qualified to be an
Office Manager.

Lawrence County Probation also argues that it terminated
Ms. Haybarger because of her poor performance. Ms. Haybarger
contends that this ostensibly non-discriminatory reason for her
termination is pretextual. The record is replete with genuine
issues of material fact as to this issue.

Viewing the evidence in the light most favorable to Ms.
Haybarger, the court finds that a reasonable jury could conclude
that Ms. Haybarger was disabled and/or regarded as disabled.  A
reasonable jury could also conclude that Lawrence County Probation
terminated her employment solely because of her disability in
violation of the Rehabilitation Act.

B.   Ms. Haybarger's FMLA Claims Against Mr. Mancino

Ms. Haybarger asserts two distinct FMLA claims against
Mr. Mancino.  She contends that Mr. Mancino both interfered with
her right to FMLA leave and terminated her in retaliation for
taking FMLA protected leave.  Mr. Mancino argues that, as a
supervisor in a public agency, he is not an "employer" as defined
by the FMLA.  In the alternative, Mr. Mancino contends that he was
not authorized to terminate Ms. Haybarger and, therefore, he is not
liable.  Mr. Mancino further argues that Ms. Haybarger was
terminated for poor performance, not in retaliation for taking

19

leave.

As the court of appeals recently observed, "[t]he purpose of the FMLA is to "balance the demands of the workplace with the needs of families.'" Schaar v. Lehigh Valley Health Serv., Inc., 598 F.3d 156, 158 (3d Cir. 2010)(quoting 29 U.S.C. § 2601(b)(1)). Thus, "the FMLA 'entitle[s] employees to take reasonable leave for medical reasons." Id. (quoting 29 U.S.C. § 2601(b)(2)). They must do so, however, "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3). Accordingly, "[a]n eligible employee is entitled to a 'total of twelve workweeks of leave during any twelve month period' but only if the employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Id. (quoting 29 U.S.C. § 2612(a)(1)(D)).

If an employee is entitled to leave, "the FMLA prohibits an employer from interfering with it or retaliating against an employee for taking it." Id.; see also 29 U.S.C. §§ 2615(a) and (b). There is no dispute that Ms. Haybarger was an employee eligible to take FMLA leave. The principal question is whether Mr. Mancino is Ms. Haybarger's "employer" as defined by the statute and corresponding regulations

Although there is a substantial split of authority on the issue, this court finds that individual supervisors in public agencies may be held liable under the FMLA when sued in their

20

individual capacity. As the court of appeals has noted "[t]he starting point of any statutory analysis is the language of the statute." Dobrek v. Phelan, 419 F.3d 259, 263 (3d Cir. 2005). The "first step is to determine whether the language at issue has a plain and unambiguous meaning." Id. Further, if the statutory language is "unambiguous and the statutory scheme is coherent and consistent," this court's inquiry is at an end. Id. If however, "the words and provisions are ambiguous - that is ... they are reasonably susceptible of different interpretations ... we look to the surrounding words and provisions and also to the words in context." Id. (citations and internal quotations omitted).

The Court of Appeals for the Third Circuit has not addressed this issue. Other courts have almost uniformly held that, under some circumstances, supervisors in the private sector are subject to individual liability under the FMLA. Cf Hewett v. Willingboro Bd. of Educ., 421 F.Supp.2d 814, 817-18 (D.N.J. 2006).

In Darby v. Bratch, 287 F.3d 673 (8ᵗʰ Cir. 2002), the Court of Appeals for the Eighth Circuit held that supervisors for either private employers or public agencies can be held liable in their individual capacities under the FMLA. In Mitchell v. Chapman, 343 F.3d 811, 829 (6ᵗʰ Cir. 2003), the Court of Appeals for the Sixth Circuit concluded that, while supervisors for private employers were subject to liability, the text of the FMLA did not support finding that supervisors in public agencies were subject to

21

individual liability. Id. at 829. Courts within the jurisdiction

of the Court of Appeals for the Third Circuit have followed Darby,

and rejected the reasoning of Mitchell. See e.g., Hayduk v. City

of Johnstown, 580 F.Supp.2d 429, 476 (W.D. Pa. 2010); Hewett, 421

F..Supp.2d 814, 817-18 (D.N.J. 2006); Kilvits v. County of Luzerne,

52 F.Supp. 2d 403, 412 (M.D. Pa. 1999). This reading is also

consistent with the wealth of decisions that have held individual

supervisors liable under the FLSA. See Burroughs v. MGC Serv.,

Inc., 2009 WL 959961, *4 (W.D. Pa. Apr. 7, 2009)(collecting cases

and observing that the FLSA has been interpreted as imposing

liability on individuals who control the working situation).

Under the FLSA, however, in order to be individually

liable a supervisor has to have "sufficient control over the

conditions and terms of employment." Kilvits, 52 F.Supp.2d at 413.

One court has observed that "a person who has the authority to hire

and fire may be considered an employer" under the FMLA. Narodetsky

v. Cardone Industries, Inc., 2010 WL 678288, *3 (E.D. Pa. Feb. 24,

2010)(citations and internal quotations omitted). Here, based on

the undisputed material facts, Mr. Mancino was not the individual

who made the final decision to terminate plaintiff. Rather, that

decision was made by Judge Motto, after consultation with both Mr.

Mancino and Mr. Occhibone.[5]

---

[5]

In light of this conclusion, we express no opinion on the
merits of Ms. Haybarger's argument that defendants' policy of
requiring employees to exhaust paid leave prior to being placed on

22

While Ms. Haybarger relies on cases interpreting Title
VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., to urge us
to characterize President Judge Motto as a mere "rubber stamp" of
Mr. Mancino's decisions, she has identified no authority to support
utilizing this theory for FMLA claims. Moreover, it is undisputed
that Judge Motto was not aware of Ms. Haybarger's requests for
leave and/or medical condition. Simply put, even if a "cat's paw"
theory is available under the FMLA, the circumstances here to not
warrant imputing Mr. Mancino's knowledge to Judge Motto.

Accordingly, Mr. Mancino's motion for summary judgment
will be granted. An appropriate order follows.

---

FMLA leave violates the FMLA, as a matter of law.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA HAYBARGER               )
          Plaintiff,          )
                              )
     v.                       )      Civil Action No. 06-862
                              )
LAWRENCE COUNTY ADULT         )
PROBATION AND PAROLE, COUNTY  )
OF LAWRENCE, WILLIAM MANCINO, )
in his individual and         )
official capacities,          )
          Defendant.          )

ORDER

AND NOW, this 13 day of July, 2010, upon consideration of

defendant William Mancino's motion for summary judgment, [Doc. No.

71], and Lawrence County Adult Probation and Parole's motion for

summary judgment, [Doc. No. 73] IT IS HEREBY ORDERED THAT Mr.

Mancino's motion is GRANTED and Lawrence County Adult Probation and

Parole's motion is DENIED.

BY THE COURT:

cc: All counsel of record